# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

DONALD WAYNE HARRIS,                )
                                    )
    Plaintiff,  )
                                    )
v.                                  )    NO. 1:20-cv-00049
                                    )
CANDACE WRIGHT LIKENS, et al.,      )    JUDGE CAMPBELL
                                    )
    Defendants. )
                                    )

## MEMORANDUM AND ORDER

Plaintiff Donald Wayne Harris, a state inmate formerly incarcerated in the Marshall County Jail, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1), a motion to appoint counsel (Doc. No. 9), and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 10).

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because Plaintiff's IFP application substantially complies with the statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 10) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of

Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## B. Section 1983 Standard

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## C. Allegations and Claims

Plaintiff alleges that, on May 14, 2020, he "reported to Nurse Candace that [he] was losing [his] vision, [having] headaches, and deterioration of [his] vision," and that he also "wrote or spoke with [Jail Administrator] Sabrina Patterson, [Assistant Jail Administrator] Richard Phillips, and [Marshall County Sheriff] Billy Lamb," all of whom noted that Nurse Candace had performed an eye examination since the Marshall County Jail did not have an eye doctor. (Doc. No. 1 at 6.) Over two months later, in the span of two weeks between July 27 and August 10, 2020, Plaintiff alleges that he requested and was denied treatment "for [his] failing eyesight" on six occasions. (*Id.* at 5, 7.) He claims that his worsening eyesight left him unable to see an attack launched by a fellow inmate who hit Plaintiff with a lunch tray. (*Id.*) As relief, Plaintiff seeks $350,000 "for being assaulted with a lunch tray and not being seen by medical." (*Id.*)

It appears from attachments to the Complaint[1] that Plaintiff filed a sick call request on July 27, 2020, complaining that he was losing his eyesight, which had worsened since he filed the last such request "a couple of months ago." (Doc. No. 1-1 at 1–2.) The response to the July 27 request was essentially that the county would arrange for an eye exam by a specialist but would not pay for it, and that Plaintiff could attempt to secure help in paying for an exam through local churches or other charitable organizations. (*Id.* at 2.) Then, on August 4, Plaintiff filed a grievance complaining of the denial of an examination by an eye doctor, in which he stated that he was

---

[1] In performing the PLRA screening to determine whether a prisoner complaint states a claim, the Court may consider grievances and other items attached to the complaint. *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that a district court evaluating whether a complaint fails to state a claim may consider "any exhibits attached" to the complaint).

4

experiencing blurred vision and headaches and "need[ed] a trained official to determine if [he] need[s] glasses or not." (*Id.* at 5.) In response, a nurse stated that Plaintiff was "currently on our doctor's list & will be seen at the next available date." (*Id.*) Two days later, on August 6, Plaintiff directed a grievance to Sheriff Lamb, complaining that he needed to see a specialist due to his symptoms and that Nurse Candace was not qualified to perform an eye examination; in response, Sheriff Lamb stated that he had requested Plaintiff be scheduled for an appointment with an eye doctor. (*Id.* at 6.)

**D. Analysis**

Plaintiff claims that Defendants violated his right to medical care by delaying or denying treatment of his worsening eyesight. (Doc. No. 1 at 4.) That claim arises under the Eighth Amendment and requires a plausible allegation of deliberate indifference to a serious medical need. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017).

Deliberate-indifference claims have both an objective and subjective component. The objective component requires that Plaintiff's visual complaints and associated headaches present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)— i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that Defendants understood yet consciously disregarded his need for treatment of those symptoms. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference thus entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, No. 19-6243, 972 F.3d 734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). It has been described as "something approaching a total unconcern for [the

5

inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm."
*Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*,
959 F.2d 673, 677 (7th Cir. 1992)).

Here, presuming the truth of Plaintiff's alleged need for vision correction and treatment of
associated symptoms, those allegations simply do not support a finding of the serious medical need
required to state an Eighth Amendment claim. Two months after the denial of his initial request to
be examined by an eye doctor, Plaintiff filed one additional sick call request before turning to the
grievance process to pursue such relief. Nowhere in the Complaint or attached sick call and
grievance filings does Plaintiff allege that the vision loss he suffered was dramatic or abrupt, that
his headaches were severe or unremitting, or that there was reason to believe that his blurry vision
and worsening eyesight might be related to any more serious medical concern. *Cf. Lumbard v.
Lillywhite*, 815 F. App'x 826, 832–33 (6th Cir. 2020) (finding that inmate had shown symptoms
that "were the kind that, if deliberately ignored, would reveal a sufficiently culpable state of mind
by the relevant prison official in denying medical care," including frequent complaints of eyesight
that was abruptly deteriorating, blurred vision, double vision, and headaches in inmate with
undiagnosed multiple sclerosis).

Instead, Plaintiff's filings assert that he had a "need [for] a specialist to check [his] eyes"
(Doc. No. 1-1 at 6) in order to determine if he required a prescription for eyeglasses (*id.* at 5); and,
that because of the "lack/delay in medical care," he was left vulnerable to an attack which he
otherwise "could have seen." (Doc. No. 1 at 7.) Such allegations are not sufficient to establish an
objectively serious medical need. *See Wagner v. City of Saint Louis Dep't of Public Safety*,
4:12CV1901 AGF, 2014 WL 3529678, at *8 (E.D. Mo. July 16, 2014) ("Courts in this District
and others have concluded as a matter of law that the denial of eyeglasses and eye medication or

headaches and blurry vision resulting from an incorrect eyeglass prescription are insufficient to establish an objectively serious medical need.") (citing, *e.g.*, *Davidson v. Scully*, 155 F. Supp. 2d 77, 88–89 (S.D.N.Y. 2001) (concluding that headaches and blurry vision resulting from an incorrect eyeglasses prescription "are not a sufficiently serious condition" to establish a violation of the Eighth Amendment)).

Nor does the harm Plaintiff allegedly suffered indicate that the delay following early refusals to pay for an eye examination resulted in a serious medical need. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citing cases for proposition that "the seriousness of a prisoner's medical needs may also be decided by the effect of delay in treatment," considering whether delay "caused injury, loss, or handicap" or "whether any delay in providing medical care was harmless"). Rather, Plaintiff's grievance filings in early August 2020 quickly persuaded the Sheriff and an unidentified nurse to recommend a doctor's visit (Doc. No. 1-1 at 5, 6), and he does not allege any untreated or unresolved pain or injury from eyestrain, headaches, or the incident "where a member of the Aryan Nation hit [him] with a dinner tray." (*Id.* at 8.)

Accordingly, the Court finds that Plaintiff fails to allege a plausible right to relief under the Eighth Amendment. His Complaint must therefore be dismissed.

### III. CONCLUSION

For the reasons given above, this action is hereby **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted. Plaintiff's motion to appoint counsel (Doc. No. 9) is **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE